J-S38021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ELIZABETH COLLAZO, | |
| Appellant | No. 2970 EDA 2015 |

Appeal from the PCRA Order of September 17, 2015
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0001202-2012

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND JENKINS, JJ.

MEMORANDUM BY OLSON, J.:                          **FILED JUNE 14, 2016**

Appellant, Elizabeth Collazo, appeals from the order entered on September 17, 2015, which dismissed her petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court has well explained the facts and procedural posture underlying this appeal:

> In the early morning hours of March 15, 2012, [Appellant], the estranged "common law wife" of the victim, Mark W. Werkheiser, entered [Werkheiser's] residence at 850 Browns Drive, [in Easton, Pennsylvania,] using a set of keys she had in her possession, knowing that she was not privileged to be there.  [Appellant] proceeded to the second floor of the residence, passed by her sleeping children and entered Werkheiser's bedroom.  Then, using a Springfield .40 caliber handgun owned by Werkheiser and taken from the trunk of his Lexus, [Appellant] fired six shots into a defenseless Werkheiser's neck and upper torso.  [Appellant] then left the father of her four children's "bullet ridden body lying on the bed partially under the covers" where he was discovered by one of their twin daughters. . . .

The police investigation into this murder revealed that the day before the killing, [Appellant] took the murder weapon to Walmart on Route 248 in Lower Nazareth Township, where she worked, and asked a co-worker how to load the weapon which she was carrying in her purse. [Appellant's] co-worker, Thomas Kale[,] told authorities that he was unaware of what [Appellant] planned to do with the weapon; however, he loaded four .40 caliber Smith & Wesson rounds into the magazine after which [Appellant] returned the handgun to her purse and left the store.

[Appellant] was subsequently charged with [criminal homicide, burglary, and theft by unlawful taking]. On December 31, 2012, [Appellant] appeared before the Honorable Edward G. Smith and entered a negotiated guilty plea to first-degree murder.[1] [Appellant] executed a guilty plea statement (colloquy), written agreement colloquy, and an oral guilty plea colloquy was conducted on the record. The written agreement colloquy contained a waiver of [Appellant's appeal and] post-conviction rights. Judge Smith found [Appellant's] plea "to be knowing and voluntary" after which he accepted the plea. [That same day, the trial court sentenced Appellant to serve] . . . a term of life imprisonment without parole. . . .

On January 28, 2014, [Appellant] filed the instant[, timely] PCRA petition. . . . On July 31, 2015, [Appellant] appeared with PCRA counsel . . . for a PCRA hearing. At the time of the PCRA hearing, PCRA counsel represented to [the PCRA] court that the only issues they were proceeding [with were] the ineffectiveness of counsel claims relat[ing] to the "Battered Woman's Syndrome." Specifically[, that] counsel "failed to employ and call an expert witness in regards to Battered Woman's Syndrome" and its effect on [Appellant] and that counsel "failed to properly advise [Appellant] on the law of Battered Woman's Syndrome" and how it relate[d] to the defenses of self-defense and imperfect self-defense.[] The only witness called by [Appellant] in support of her PCRA petition was trial counsel, James M. Connell,

_____

[1] 18 Pa.C.S.A. § 2502(a).

- 2 -

Esquire. Attorney Connell's testimony did not support any of [Appellant's] claims. Interestingly, [Appellant] elected not to take the stand in support of the bald claims set forth in her PCRA petition.

PCRA Court Opinion, 9/17/15, at 1-4 (internal citations and some internal capitalization omitted).

On September 17, 2015, the PCRA court denied Appellant post-conviction collateral relief. As the PCRA court cogently explained in its contemporaneously filed opinion, Appellant had validly waived her post-conviction rights and, even if Appellant had not waived her post-conviction rights, Appellant's claims failed on the merits. *See* PCRA Court Opinion, 9/17/15, at 1-12.

Appellant filed a timely notice of appeal and now raises one claim:

Whether the [PCRA] court committed legal error by denying Appellant's PCRA claim because counsel failed to fully inform [Appellant] of her defenses and therefore neither the waiver of rights [nor] the plea could be knowing and voluntary?

Appellant's Brief at 4 (some internal capitalization omitted).

We reviewed the briefs of the parties, the relevant law, the certified record, the notes of testimony, and the thorough opinion of the able PCRA court judge, the Honorable Stephen G. Baratta. We conclude that there has been no error in this case and that Judge Baratta's opinion, entered on September 17, 2015, meticulously and accurately disposes of Appellant's issues on appeal. Therefore, we affirm on the basis of Judge Baratta's opinion and adopt it as our own. In any future filings with this or any other

court addressing this ruling, the filing party shall attach a copy of the PCRA court opinion.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/14/2016

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
COMMONWEALTH OF PENNSYLVANIA
CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | No. CR-1202-2012 |
| | : | |
| v. | : | |
| | : | |
| ELIZABETH COLLAZO, | : | |
| | : | |
| Defendant | : | |

## OPINION AND ORDER OF COURT

Before the Court for disposition is Defendant's, Elizabeth Collazo, petition for relief filed pursuant to the Post-Conviction Relief Act (PCRA), 42 PA.CONS.STAT.ANN. §§ 9541-9546.

### I. Factual Background and Procedural History

In the early morning hours of March, 15, 2012[1], Defendant, Elizabeth Collazo ("Collazo"), the estranged "common law wife" of the victim, Mark W. Werkheiser, entered the victim's residence at 850 Browns Drive, Easton, Williams Township, Pennsylvania, using a set of keys she had in her possession, knowing that she was not privileged to be there. Collazo proceeded to the second floor of the residence, passed by her sleeping children and entered Werkheiser's bedroom. Then, using a Springfield .40 caliber handgun owned by Werkheiser and taken from the trunk of his Lexus, Collazo fired six shots into a defenseless Werkheiser's neck and upper torso. Collazo then left the father of her four children's "bullet ridden body lying on the bed partially under the covers" where he was discovered by one of their twin daughters. See N.T., Guilty Plea, 12/31/02, at 36. The police investigation into this murder revealed that the

---

[1] Noteworthy is the fact that on March 15, 2012, the parties were due in Northampton County Court for a custody hearing at 1:00 PM.



day before the killing, Collazo took the murder weapon to Walmart on Route 248 in Lower Nazareth Township, where she worked, and asked a co-worker how to load the weapon which she was carrying in her purse. Collazo's co-worker, Thomas Kale told authorities that he was unaware of what Collazo planned to do with the weapon; however he loaded four 40-caliber Smith & Wesson rounds into the magazine after which Collazo returned the handgun to her purse and left the store.

Collazo was subsequently charged with Criminal Homicide (F1), 18 Pa.C.S.A. § 2501(a), Burglary (F1), 18 Pa.C.S.A. § 3502(a), and Theft by Unlawful Taking, 18 Pa.C.S.A. § 3921(a). On December 31, 2012, Collazo appeared before the Honorable Edward G. Smith and entered a negotiated guilty plea to first-degree murder. Collazo executed a Guilty Plea Statement (Colloquy), Written Agreement Colloquy and, an Oral Guilty Plea Colloquy was conducted on the record. The Written Agreement Colloquy contained a waiver of Defendant's Appellate and Post-Conviction Rights. Judge Smith found Collazo's plea "to be knowing and voluntary" after which he accepted the plea. *See* N.T., Guilty Plea, 12/31/12, at 73. Collazo was then sentenced to a term of life imprisonment without parole. In sentencing Collazo, Judge Smith Court placed the following on the record:

> THE COURT: Very well. The court has carefully considered the factual basis underlying this offense. The court has also carefully considered the impact testimony that's given, as well as the testimony that's given on behalf of the defendant. This court is well aware this is a mandatory sentence and must consider whether the plea agreement meets with the interests of justice. And the defendant in this case has attempted to cloak herself as a victim. She was a pathetic, self-absorbed, cold-blooded killer, and it would be unusual to call a cold-blooded killer a coward, but, in fact, in this case she snuck into the bedroom where the victim is sleeping, knowing that he could not defend himself, armed and ready to shoot knowing that she was going to take the life of her four

2

children's father with no justification at all except her own selfishness. It is difficult to fathom how depraved a person must be to commit such an act.

The court has considered everything she has said, and presented as well as what the victim's family has presented. The court is also well aware of the silent testimony of Mark Werkheiser. He's not here to defend himself against the allegations set forth by Ms. Collazo, but I will tell you all the evidence presented to this court suggests that she has a twisted view of reality brought about by her ego and her selfishness.

You're a cold-blooded killer. You have shown no remorse. No hint of compassion or recognition of his humanity or the special place that he held in the lives of your four children, his parents and his family. What you did was you brutally robbed your children of their father. The pain you have caused is immeasurable, and this court can only imagine the suffering this family has gone through and will continue to go through. I find under the circumstances of this case that you being incarcerated for the rest of your life without the possibility of parole is an appropriate and necessary punishment, and that the pretrial agreement meets with public policy and my own notions of fairness. Accordingly, I am imposing sentence in accordance with the plea agreement.

Ma'am you are sentenced to spend the rest of your living days incarcerated in a state correctional institution. You are not to be paroled. You are to die in prison.

*Id.* at 91-93.

On January 28, 2014, Collazo filed the instant PCRA petition. Disposition of her PCRA petition been vastly delayed in this case due to Collazo's request for a psychological evaluation, new counsel and several issue-framing conferences to siphon out the viable issues in her thirty-nine (39) page PCRA petition. On July 13, 2015, Collazo appeared with PCRA counsel, Catherine Kollett, Esquire for a PCRA hearing. At the time of the PCRA hearing, PCRA counsel represented to this Court that the only issues they were proceeding are the ineffectiveness of counsel claims related to the "Battered Woman's Syndrome". Specifically that, counsel "failed to employ and call an expert witness in regards to Battered Woman's Syndrome" and its effect on Ms.

3

Collazo" and that counsel "failed to properly advise Ms. Collazo on the law of Battered Woman's Syndrome" and how it relates to the defenses of self-defense and imperfect self-defense." *See* PCRA Petition, 1/28/14, at 8, 21; *see also* N.T., PCRA Hearing, 7/13/15. The only witness called by Collazo in support of her PCRA petition was trial counsel, James M. Connell, Esquire. Attorney Connell's testimony did not support any of Collazo's claims. *Id.* Interestingly, Collazo elected not to take the stand in support of the bald claims set forth in her PCRA Petition. *Id.*

This matter is now ripe for disposition.

## II.    PCRA Standard of Review

When reviewing an order dismissing a PCRA petition, the Superior Court must determine whether the ruling of the PCRA court is supported by record evidence and is free of legal error. *Commonwealth v. Burkett*, 5 A.3d 1260, 1267 (Pa. Super. 2010). "Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record." *Commonwealth v. Carter*, 21 A.3d 680, 682 (Pa. Super. 2011) (citation omitted).

## III.    Discussion

### *Collazo Waived Her Right to Pursue Post-Conviction Relief*

As a prefatory matter, the Commonwealth argues that Collazo's PCRA petition should be denied on the grounds that, as part of her negotiated guilty plea, she waived her appellate rights as well as her right to pursue post-conviction relief.

Plea bargaining is a crucial component of our criminal justice system. *Commonwealth v. Anderson*, 643 A.2d 109, 112 (Pa. Super. 1994). Courts have repeatedly recognized that defendants can waive valuable rights – including the right to

4

appeal or other constitutional rights – in exchange for important concessions by the Commonwealth, provided that the defendant waives her rights knowingly, voluntarily, and intelligently. *See e.g., Commonwealth v. Bronshtein*, 729 A.2d 1102, 1106 (Pa. 1999) (upholding validity of knowing, intelligent, voluntary waiver of capital prisoner's right to pursue post-conviction remedies); *Commonwealth v. Barnes*, 687 A.2d 1163, 1167 (Pa. Super. 1996) (defendant's agreement following murder conviction to waive rights to file motion for post-trial relief in return for Commonwealth not seeking death penalty was made in knowing, voluntary, and intelligent manner; counsel and defendant agreed that defendant faced possibility of death penalty, and defendant engaged in extensive colloquy regarding agreement); *Commonwealth v. Johnson*, 466 A.2d 636, 641 (Pa. Super. 1983) (citation omitted). Enforcement of plea agreements is essential to the well-being of the criminal justice system, because no party would enter into plea agreements if they believed that the other side could later approach the judge and have the sentence unilaterally altered. *Commonwealth v. Coles*, 530 A.2d 453, 458 (Pa. Super. 1987). Without plea agreements, our already overburdened criminal justice system would be in danger of collapse.

On December 31, 2012, Collazo appeared before this Court and entered a negotiated guilty plea to the charge of first-degree murder. As part of the plea process, Collazo executed two written forms, a Guilty Plea Statement (Colloquy) and a Written Agreement Colloquy. In the Guilty Plea Statement (Colloquy) signed and dated by Collazo on December 28, 2012, Collazo averred that, she "can read, write and understand the English language". *See* Guilty Plea Statement (Colloquy), 12/28/12, at ¶ 5. Collazo further averred that she is not being treated for a mental illness and that she

5

has not had "any physical or mental illness that would affect [her] ability to understand [her] rights or affect the voluntary nature of [her] plea." *Id.* at ¶¶ 8-9. Collazo was also not "presently taking any medications or drugs which might affect [her] thinking or free will." *Id.* at ¶ 10. Collazo further averred that she fully understood the nature of the charges to which she was pleading guilty and that she had a constitutional right to a trial by jury. *Id.* at ¶¶ 14-21. Collazo acknowledged that she had been apprised of the maximum range of sentences that could be imposed for first-degree murder as life imprisonment. *Id.* at ¶ 27.

Relevant to the issue before this Court are the paragraphs of the Guilty Plea Statement (Colloquy) related to appellate rights and withdrawal of a guilty plea. As a component of the plea bargain, Collazo had to agree to waive all appellate and post-conviction rights[2]. For this reason, paragraphs 33-36 were crossed out on the form. *Id.* at ¶¶ 33-36. Collazo manifested her agreement to this by initialing the bottom of the form. *Id.* Additionally, during the oral guilty plea colloquy the follow exchange took place on the record:

> THE COURT: Now, I note that as part of the guilty plea statement you have eliminated the appellate rights section found on Pages 5 and , and including questions 33, 34, 35 and 36. Do you fully understand the appellate rights that you're waiving in this matter?
>
> MS. COLLAZO: Yes, your Honor.

*See* N.T., Guilty Plea, 12/31/12, at 29. Collazo further verified that no one had "forced [her] by any means to enter" the guilty plea and she was doing it on her own free will.

---

[2] It should be noted that, at the time of the PCRA hearing, trial counsel, James M. Connell, Esquire, testified that it was his advice to accept the Commonwealth's plea offer; however he recommended against accepting the waiver of appellate rights. It was against his recommendation that "[Collazo] wanted to do so." Attorney Connell also testified that he was ready and prepared for trial. *See* N.T., PCRA Hearing, 7/13/15.

6

*See* Guilty Plea Statement (Colloquy), 12/28/12 at ¶¶ 37-38. In Paragraph 41 Collazo conceded that no promises have been made to her to enter the guilty plea other than the negotiated plea agreement itself. *Id.* at ¶ 41. More importantly, Collazo indicated she was satisfied with the representation of her attorneys and that she had sufficient time to consult with counsel whom reviewed with her "the possible defenses to these charges and the witnesses [they] might call on [her] behalf." *Id.* at ¶¶ 42-45.

In the Written Agreement Colloquy presented as an addendum to the standard guilty plea form in Northampton County, Collazo specifically affirmed that:

8. In return for the district attorney's decision not to seek the death penalty on the count of Murder in the First-Degree for which I have pleaded guilty, I agree to the following terms and conditions of this written agreement:

   (a) I agree to accept a sentence of mandatory life imprisonment without parole on the Count of Murder in the First-Degree;

   (b) I agree to never seek or file, or have filed on my behalf, any direct **or collateral appeals** of either my conviction or sentence or this Agreement to either the Pennsylvania Superior or Supreme Courts, or to any federal courts. I know that I am now giving up these rights forever;

   (c) I agree to never seek or file, or have filed on my behalf, **any claims of ineffective assistance of counsel**, including but not limited to: a claim of lack of preparation for trial, lack of defense strategy, failure to file pre-trial motions and a claim of any defense attorney errors pre-trial, trial and post-trial. I know that I am now giving up these rights forever;

   \*\*\*

   (f) I agree to never seek or file, or have filed on my behalf, any **state** or federal **collateral appeals** of my conviction or sentence or this agreement, including but not limited to, **any relief under the Post Conviction Relief Act** or any Federal Habeas Corpus Petitions as follows...

7

*See* Written Agreement Colloquy, 12/30/12, at ¶ 8 (emphasis added). In the Written Agreement Colloquy Collazo further acknowledged that "nobody has promised [her] anything or forced [her] or threatened [her] to accept the terms and conditions of this Agreement." *Id.* at ¶ 10. In her handwriting Collazo added the language "I have been promised communication with my children by writing and communication by my children if they choose including visits." *Id.* The addendum to paragraph 10 is initialed and dated by Collazo. *Id.* Further, Collazo indicated that her "lawyers have fully explained to [her] what it means to accept the terms and conditions of this Agreement and they have each reviewed and examined this written agreement colloquy with [her] and it is [her] decision to accept all terms and conditions..." *Id.* at ¶14. Collazo accepted "all terms and conditions of this agreement, knowingly, intelligently and voluntarily. *Id.* at ¶ 16. The Written Agreement Colloquy is signed and dated by Collazo, certified by defense counsel and the district attorney. *Id.*

At the time of the oral colloquy, the Court again queried Collazo on the issue of waiver of her appellate and post-conviction relief rights. The Court comprehensively explained direct appeal rights and collateral rights on the record to Collazo. *See* N.T., Guilty Plea, 12/31/12, at 30-31. This Court then stated:

THE COURT: Now, as part of this plea agreement, you are waiving all of those appellate rights. Do you understand that?

MS. COLLAZO: Yes.

THE COURT: Have you discussed them in detail with your counsel?

MS. COLLAZO: Yes, your Honor.

THE COURT: And do you believe their advice has been in your best interest?

8

MS. COLLAZO:     Yes, your Honor.

THE COURT:     Do you understand the appeal rights that you are waiving?

MS. COLLAZO:     Yes, your Honor.

THE COURT:     And do you wish to waive those appeal rights as part of this plea agreement?

MS. COLLAZO:     Yes, your Honor.

THE COURT:     And, Mr. Connell, are you satisfied that she fully understands all the appeal rights that she is waiving pursuant to this pretrial agreement?

MR. CONNELL:     Yes I am, your Honor.

THE COURT:     And do you believe I have properly set forth in detail here on the record those appeal rights?

MR. CONNELL:     Yes, judge.

THE COURT:     Do you wish to make further inquiry of your client with respect to her waiver of appeal?

MR. CONNELL:     No, your Honor.

*Id*. at 31-33. Based upon the exhaustive record made by Judge Smith, we find that Collazo, knowingly, intelligently and voluntarily entered into the negotiated plea which included a waiver of all direct appeal and collateral rights, including the right to file the instant PCRA petition. Collazo's agreement, both written and oral, with the plea bargain remained steadfast throughout the entire plea process. Accordingly, Collazo should be bound by the terms of her bargain.

However, even if we were to reach the merits of Collazo's substantive PCRA claims, she is not entitled to collateral relief as her issues clearly lack arguable merit.

9

## Ineffectiveness of Counsel – General Standard

The law presumes counsel has rendered effective assistance. *Commonwealth v. Williams*, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Williams, supra.*

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness if of arguable merit..." *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa. Super. 2004).

> Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effect uate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

*Pierce, supra* at 524, 645 A.2d at 194-195 (internal citations omitted).

> Prejudice is established when [a defendant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [*Kimball, supra*], we held that a "criminal defendant alleging prejudice must show

10

that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Commonwealth v. Chambers*, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (some internal citations and quotation marks omitted).

### *Ineffectiveness of Counsel –Battered Woman's Syndrome*

Collazo avers that trial counsel was ineffective in failing to properly advise her on the "law of 'Battered Woman's Syndrome' and how it relates to the defense of self-defense" and in failing to "employ and call an expert witness in regard to...its effect on [Collazo]." *See* PCRA Petition, 1/28/14, at 8, 21. As a result, Collazo argues that her guilty plea was involuntary. The record clearly belies this argument.

"[E]xpert testimony regarding battered woman syndrome...is admissible as probative evidence of the defendant's state of mind as it relates to a theory of self-defense." *Commonwealth v. Miller*, 634 A.2d 614, 621-622 (Pa. Super. 1993). "The syndrome does not represent a defense to homicide in and of itself, but rather, is a type of evidence which may be introduced on the question of the reasonable belief requirement of self-defense in cases which involve a history of abuse between the victim and the defendant. *Id.* at 622.

Trial counsel, James M. Connell, Esquire testified at the time of the PCRA hearing that he was the lead attorney appointed to represent Collazo. Approximately two months prior to the scheduled trial date, Attorney Connell was provided with discovery materials including, but not limited to text messages, phone records and email communications. Attorney Connell testified at the PCRA hearing that he fully discussed with Collazo "all possible defenses" including the viability of a self-defense argument predicated upon a battered woman's theory. According to Attorney Connell, Collazo

11

discussed with him the "abusive nature of her relationship" with the victim, Mark Werkhesier and as such, Attorney Connell strategically investigated her claim.

Attorney Connell examined the cross-filed protection from abuse records[3], Collazo's medical records, which included emergency room reports and discharge summaries for treatment "more than several months before the homicide" and, employed investigator John E. Stahr who interview potential lay witnesses, including Collazo's own children, to support her claims of abuse as most of the information provided by Collazo to Attorney Connell was "self-reported". More importantly, contrary to Collazo's assertion otherwise, Attorney Connell testified that the defense hired Brenda Russell, Ph.D., an expert in battered woman's syndrome to review Collazo's file which included all of the hospital records. Dr. Russell communicated to defense counsel that the abuse allegations appeared unsubstantiated. Dr. Russell did not prepare a report on behalf of the defense. Attorney Connell communicated this information to Collazo and she "understood it was not [going to be] a valid or good defense" in this case.

Here, there is no history of physical, sexual or emotional abuse uncovered by the defense in its thorough investigation of this case, which would support a theory of battered spouse syndrome. This is not a case about abuse. It's a case of premediated murder perpetrated by Elizabeth "Lily" Collazo, a cold-blooded killer who selfishly took the life of Mark Werkheiser, the father of her four children. As such, we cannot deem counsel to be ineffective for failing to pursue a meritless claim.

WHERFORE, we enter the following Order:

---

[3] There were no protection from abuse (PFA) orders in effect at the time of the homicide.

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
COMMONWEALTH OF PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :        No. CR-1202-2012

                v.              :

ELIZABETH COLLAZO,           :

          Defendant  :

## ORDER OF COURT

AND NOW, this ____ day of September, 2015, upon consideration of Defendant's, Elizabeth Collazo, petition for relief filed pursuant to the Post-Conviction Relief Act (PCRA), 42 PA.CONS.STAT.ANN. §§ 9541-9546, said petition is hereby DENIED.

BY THE COURT:

_____
STEPHEN G. BARATTA, P.J.

13